No. 14-13482

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellant,

v.

CATASTROPHE MANAGEMENT SOLUTIONS,

Defendant - Appellee.

On Appeal from the United States District Court
for the Southern District of Alabama
Honorable Charles R. Butler, Jr., District Judge

**BRIEF AMICUS CURIAE OF
PACIFIC LEGAL FOUNDATION
IN SUPPORT OF DEFENDANT - APPELLEE
AND AFFIRMANCE**

MERIEM L. HUBBARD
JOSHUA P. THOMPSON
  Pacific Legal Foundation
  930 G Street
  Sacramento, California 95814
  Telephone:  (916) 419-7111
  Facsimile:  (916) 419-7747

Counsel for Amicus Curiae
Pacific Legal Foundation

No. 14-13482

*Equal Employment Opportunity Commission*
*v. Catastrophe Management Solutions*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Circuit Rule 26.1-1, Amicus Curiae certifies that the following persons and entities have an interest in the outcome of these appeals:

1.      Bean, Julie, counsel for Plaintiff - Appellant;

2.      Brown, Whitney R., counsel for Defendant - Appellee;

3.      Bruner, Paula R., counsel for Plaintiff - Appellant;

4.      Butler, Jr., Charles R., United States District Court Judge;

5.      Catastrophe Management Solutions, Defendant - Appellee;

6.      Equal Employment Opportunity Commission, Plaintiff - Appellant and counsel for Plaintiff - Appellant;

7.      Gibson Dunn & Crutcher, LLP, counsel for Defendant - Appellee;

8.      Hubbard, Meriem L., counsel for Amicus Curiae Pacific Legal Foundation;

9.      Johnson, Jr., Thomas M., counsel for Defendant - Appellee;

10.     Lehr Middlebrooks & Vreeland, P.C., counsel for Defendant - Appellee;

11.     Middlebrooks, David J., counsel for Defendant - Appellee;

No. 14-13482

*Equal Employment Opportunity Commission*
*v. Catastrophe Management Solutions*

12.     Milling, Bert W., Jr., United States District Court Magistrate Judge;

13.     Pacific Legal Foundation, Amicus Curiae;

14.     Rucker, Marsha Lynn, counsel for Plaintiff - Appellant;

15.     Scalia, Eugene, counsel for Defendant - Appellee;

16.     Smith, C. Emanuel, counsel for Plaintiff - Appellant;

17.     Thompson, Joshua P., counsel for Amicus Curiae Pacific Legal Foundation.


_____ s/ Joshua P. Thompson _____
JOSHUA P. THOMPSON

Counsel for Amicus Curiae
Pacific Legal Foundation

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

    CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . C-1

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IDENTITY AND INTEREST OF AMICUS CURIAE . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  I.  TITLE VII'S PROHIBITION ON INTENTIONAL

     RACIAL DISCRIMINATION DOES NOT COVER

     MUTABLE CULTURAL CHARACTERISTICS . . . . . . . . . . . . . . . . . . . . 5

  II.  THIS COURT SHOULD REJECT THE EEOC'S

     LATEST ATTEMPT TO REWRITE TITLE VII . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Florida Power Corp.*, 535 U.S. 228 (2002) . . . . . . . . . . . . . . . . . . . . . . . 1

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) . . . . . . . . . . . . . . 1, 6, 10

*Alexander v. Sandoval*, 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) . . . . . . . . . . . . 7

*Brown v. D.C. Transit Sys., Inc.*, 523 F.2d 725 (D.C. Cir. 1975) . . . . . . . . . . . . 4, 8

*Carswell v. Peachford Hosp.*, No. C80-222A,

    1981 WL 224 (N.D. Ga. May 26, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*,

    538 U.S. 188 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*City of Los Angeles, Dep't of Water & Power v. Manhart*,

    435 U.S. 702 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) . . . . . . . . . . . . . . . . . 1

*Coal. for Econ. Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997) . . . . . . . . . . . . . . 4

*Cooper v. Am. Airlines, Inc.*, No. 97-1901,

    1998 WL 276235 (4th Cir. May 26, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Davis v. City of Dallas*, 777 F.2d 205 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 13

*Eatman v. United Parcel Serv.*, 194 F. Supp. 2d 256 (S.D.N.Y. 2002) . . . . . . . 4, 9

**Page**

EEOC v. Carolina Freight Carriers Corp.,

    723 F. Supp. 734 (S.D. Fla. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

EEOC v. Catastrophe Mgmt. Solutions,

    11 F. Supp. 3d 1139 (S.D. Ala. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 10-11

EEOC v. Freeman, 961 F. Supp. 2d 783 (D. Md. 2013) . . . . . . . . . . . . . . 5, 13-14

*EEOC v. Kaplan Higher Educ. Corp.,

    748 F.3d 749 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 11-12, 14

EEOC v. Kaplan Higher Learning Educ. Corp.,

    No. 1:10 CV 2882, 2013 WL 322116 (N.D. Ohio Jan. 28, 2013) . . . . . . . . . . . 12

Fisher v. Univ. of Tex. at Austin, 133 S. Ct. 2411 (2013) . . . . . . . . . . . . . . . . . . . . 1

Frontiero v. Richardson, 411 U.S. 677 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Garcia v. Gloor, 618 F.2d 264 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Garcia v. Spun Steak Co., 998 F.2d 1480 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 7

Gratz v. Bollinger, 539 U.S. 244 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Grutter v. Bollinger, 539 U.S. 306 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Hirabayashi v. United States, 320 U.S. 81 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977) . . . . . . . . . . . . . . . . 6

Johnson v. California, 543 U.S. 499 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Lewis v. City of Chicago, Ill., 560 U.S. 205 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Page**

*McBride v. Lawstaf, Inc.*, No. 1:96-cv-0196-cc,

    1996 WL 755779 (N.D. Ga. Sept. 19, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . 3

*Miller v. Johnson*, 515 U.S. 900 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,

    551 U.S. 701 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pitts v. Wild Adventures, Inc.*, No. 7:06-CV-62-HL,

    2008 WL 1899306 (M.D. Ga. Apr. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . . . . 3

*Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978) . . . . . . . . . . . . . . . . . . . . 1

*Ricci v. DeStefano*, 557 U.S. 557 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Richardson v. Hotel Corp. of Am.*, 332 F. Supp. 519 (E.D. La. 1971) . . . . . . 13-14

*\*Rogers v. American Airlines, Inc.*, 527 F. Supp. 229 (S.D.N.Y. 1981) . . . . . . . 7-8

*Santee v. Windsor Court Hotel Ltd. P'ship*,

    No. 99-3891, 2000 WL 1610775 (E.D. La. Oct. 26, 2000) . . . . . . . . . . . . . . . . 9

*Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005) . . . . . . . . . . . . . . . . . . . . . . 1

*Thomas v. Firestone Tire & Rubber Co.*,

    392 F. Supp. 373 (N.D. Tex. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164 (1972) . . . . . . . . . . . . . . . . 5

**Page**

*Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084 (5th Cir. 1975) . . . . . . . . . . . 7

\*Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460 (N.D. Cal. 1978) . . . . . . . . . . 6, 8

*Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986)  . . . . . . . . . . . . . . . . . . . . . . 1

**Federal Statutes**

42 U.S.C. § 2000e-2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

§ 2000e-2(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Miscellaneous**

Greene, D. Wendy, *Title VII:  What's Hair (and Other*

*Race-Based Characteristics) Got to Do with It?*,

79 U. Colo. L. Rev. 1355 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

Hruz, Thomas M., *The Unwisdom of the Wisconsin Fair Employment Act's*

*Ban of Employment Discrimination on the Basis of Conviction Records*,

85 Marq. L. Rev. 779 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Johnson, Kevin R., *The Case Against Race Profiling in*

*Immigration Enforcement*, 78 Wash. U. L.Q. 675 (2000) . . . . . . . . . . . . . . . . 13

May, Bruce E., *The Character Component of Occupational Licensing Laws:*

*A Continuing Barrier to the Ex-Felon's Employment Opportunities*,

71 N.D. L. Rev. 187 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Page**

U.S. EEOC, Questions and Answers - Implementation of

    Revised Race and Ethnic Categories, *available at*

    http://www.eeoc.gov/employers/eeo1/qanda-implementation.cfm

    (last visited Jan. 8, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Williams, Kristen A., *Employing Ex-Offenders:  Shifting the Evaluation*

    *of Workplace Risks and Opportunities from Employers to Corrections*,

    55 UCLA L. Rev. 521 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF THE ISSUE

Whether the district court properly dismissed the EEOC complaint for failure to state a plausible claim of intentional race discrimination under Title VII.

## IDENTITY AND INTEREST OF AMICUS CURIAE

Pacific Legal Foundation (PLF) was founded in 1973 and is widely recognized as the largest and most experienced nonprofit legal foundation of its kind. PLF has extensive experience litigating cases involving racial discrimination, racial preferences, and civil rights. PLF has participated as amicus curiae in nearly every major racial discrimination case heard by the United States Supreme Court in the past four decades, including *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411 (2013); *Ricci v. DeStefano*, 557 U.S. 557 (2009); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007); *Johnson v. California*, 543 U.S. 499 (2005); *Gratz v. Bollinger*, 539 U.S. 244 (2003); *Grutter v. Bollinger*, 539 U.S. 306 (2003); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989); *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986); and *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978). PLF has also participated as amicus curiae in many Title VII cases such as *Lewis v. City of Chicago, Ill.*, 560 U.S. 205 (2010); *Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005); *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188 (2003); *Adams v. Florida Power Corp.*, 535 U.S. 228 (2002); and *Alexander v. Sandoval*, 532 U.S. 275 (2001).

PLF submits this brief because it believes its public policy perspective and litigation experience litigating equal protection and Title VII cases will provide an additional viewpoint with respect to the issues presented, which will be helpful to this Court.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Like countless businesses across the country, Catastrophe Management Solutions (Catastrophe) requires its employees to be "dressed and groomed in a manner that projects a professional and businesslike image." *EEOC v. Catastrophe Mgmt. Solutions*, 11 F. Supp. 3d 1139, 1140 (S.D. Ala. 2014). It requires that employees have professional hairstyles, and does not allow hairstyles that are "excessive" or an "unusual color[]." *Id.* This policy prohibits employees from wearing dreadlocks on the job. *Id.* After an African-American woman with dreadlocks was offered a job on the condition that she adopt a more professional hairstyle, the United States Equal Employment Opportunity Commission (EEOC) sued Catastrophe. The EEOC alleged that Catastrophe's policy prohibiting dreadlocks, on its face, constitutes intentional racial discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a)(1). *See Catastrophe*

---

[1] All parties, through their attorneys, have consented to the filing of this brief. Counsel for the parties in this case did not author this brief in whole or in part. No person or entity, other than Amicus Curiae Pacific Legal Foundation, its members, and its counsel made a monetary contribution to the preparation and submission of this brief.

*Mgmt. Solutions*, 11 F. Supp. 3d at 1140.  The district court dismissed the lawsuit based on numerous precedential decisions holding that an employer's hairstyle preferences cannot facially violate Title VII.  *Id.* at 1141-44.

It is important to note what EEOC's lawsuit is *not* alleging.  EEOC does not allege that Catastrophe's prohibition on dreadlocks is indirect evidence of racial discrimination.  Such a claim could be heard under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the EEOC would be required to show that Catastrophe's prohibition on dreadlocks in the workplace was merely a pretext to discriminate against black individuals.  *Id.* at 805. Nor is EEOC alleging that Catastrophe's decision to prohibit dreadlocks was in part motivated by race.  That would be a "mixed motive" case, and EEOC would have to show that Catastrophe's dreadlocks policy was predominantly motivated by racially discriminatory reasons.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989) (plurality op.).  And EEOC is not alleging that Catastrophe's policy prohibiting dreadlocks has a disparate impact on black employees in violation of Title VII's disparate impact provisions.  *See* 42 U.S.C. § 2000e-2(k).

EEOC's sole argument is that Catastrophe's policy prohibiting dreadlocks in the workplace provides direct evidence of intentional racial discrimination.  *See Catastrophe Mgmt. Solutions*, 11 F. Supp. 3d at 1140.  EEOC argues that a mutable characteristic, hairstyle, is the same as race, an immutable characteristic.  In effect,

- 3 -

EEOC does not distinguish between policies that prohibit black individuals from working at a business from those that require all employees to adopt a professional hairstyle.  EEOC's complaint is outlandish and the district court was correct to dismiss it.

If merely stating EEOC's alleged Title VII violation does not suffice to refute it, then Title VII teeters on the brink of incoherence.  *See Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 702 (9th Cir. 1997).  Since at least the early 1970s, federal courts have rejected claims that a grooming policy is racially discriminatory on its face.  *See*, *e.g.*, *Brown v. D.C. Transit Sys., Inc.*, 523 F.2d 725, 728 (D.C. Cir. 1975); *Thomas v. Firestone Tire & Rubber Co.*, 392 F. Supp. 373, 374 (N.D. Tex. 1975).  So too have federal courts rejected claims that a policy prohibiting dreadlocks facially discriminates against black individuals.  *See Eatman v. United Parcel Serv.*, 194 F. Supp. 2d 256, 262 (S.D.N.Y. 2002).  Put simply, there is no legal basis for EEOC's complaint against Catastrophe.   An employment policy requiring professional haircuts, and interpreted and applied to prohibit dreadlocks on all individuals, can never facially discriminate against black individuals as a matter of law.

This is just the latest attempt by EEOC to expand the reach of Title VII beyond its statutory text.  In at least two cases decided within the past eighteen months, federal courts have heard—and dismissed—EEOC lawsuits that ignored clear and contrary precedent.  Discussed in more detail below, *EEOC v. Kaplan Higher Educ.*

- 4 -

*Corp.*, 748 F.3d 749 (6th Cir. 2014), and *EEOC v. Freeman*, 961 F. Supp. 2d 783 (D. Md. 2013), demonstrate the lengths that the agency will go to institute its unilateral view of Title VII.  Like those cases, EEOC's complaint here was properly dismissed, and this Court should affirm the decision below.

## ARGUMENT

### I

### TITLE VII'S PROHIBITION ON INTENTIONAL RACIAL DISCRIMINATION DOES NOT COVER MUTABLE CULTURAL CHARACTERISTICS

Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin."  *See* 42 U.S.C. § 2000e-2(a)(1).  Save for Title VII's prohibition on religion-based discrimination, Title VII prohibits discrimination solely on the basis of certain immutable human characteristics.  Congress sought to prohibit discrimination on these special bases because imposing special burdens on individuals "solely by the accident of birth . . . [would] violate 'the basic concept of our system that legal burdens should bear some relationship to individual responsibility.'" *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (quoting *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 175 (1972)); *see also* Thomas M. Hruz, *The Unwisdom of the Wisconsin Fair Employment Act's Ban of Employment Discrimination on the Basis of Conviction Records*, 85 Marq. L. Rev. 779, 821 (2002) (explaining that

Title VII was designed to prohibit discrimination on bases beyond the employee's control).

The primary purpose of Title VII was to prohibit discrimination on the basis of race. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (noting that intentional racial discrimination is "[u]ndoubtedly . . . the most obvious evil Congress had in mind when it enacted Title VII"); *see also* D. Wendy Greene, *Title VII: What's Hair (and Other Race-Based Characteristics) Got to Do with It?*, 79 U. Colo. L. Rev. 1355, 1360 (2008) ("Congress' principal purpose in enacting Title VII was to prohibit employment discrimination because of race or color."). Racial discrimination is particularly pernicious, because racial distinctions "are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Adarand*, 515 U.S. at 214 (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)). Like the Constitution, Title VII "abhors classifications based on race," in part, because whenever businesses make race relevant to the burdens or benefits of employment, "it demeans us all." *Grutter*, 539 U.S. at 353 (Thomas, J., dissenting).

Unlike race, mutable characteristics are by definition changeable, and are therefore outside the scope of Title VII's prohibition on racial discrimination in employment. *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 469 (N.D. Cal. 1978) (Title VII is not implicated when an employment decision is based on "easily changed

physical characteristics.").  For example, courts have rejected attempts to shoehorn employment-related language requirements into Title VII's prohibition on racial (or national origin-based) discrimination, because language, unlike race, is mutable.  In *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980), the Fifth Circuit  rejected a Title VII claim brought against a business requirement that English be spoken on the job. [2]  The Court held that Title VII's prohibitions "must not be confused with ethnic or sociocultural traits," and that "employers are barred from discriminating against employees on the basis of immutable characteristics."  *Id.* at 269 (quoting *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1091 (5th Cir. 1975).  Other circuits have also rejected Title VII claims arising out of language-based policies.  *See Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1487 (9th Cir. 1993) ("Title VII . . . does not protect the ability of workers to express their cultural heritage at the workplace.").

Accordingly, it is unsurprising that courts across the country have universally rejected Title VII claims arising out of employment-related hairstyle requirements. The most frequently cited case for this proposition is *Rogers v. American Airlines, Inc.*, 527 F. Supp. 229 (S.D.N.Y. 1981).  In *Rogers*, a black female brought a disparate treatment case under Title VII alleging that her employer's prohibition on "corn row" hairstyles was racially discriminatory on its face.  *Id.* at 231.  The court dismissed the

---

[2] Fifth Circuit decisions issued before October 1, 1981, are binding precedent in this Circuit.  *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

complaint because a prohibition on certain hairstyles, "even if socioculturally associated with a particular race or nationality, is not an impermissible basis for distinctions in the application of employment practices by an employer." *Id.* at 232.

*Rogers* followed the holdings of numerous decisions that hairstyle policies do not, on their face, constitute racial discrimination. In *Brown*, 523 F.2d at 728, the D.C. Circuit held that "the requirement of hirsute conformity applicable to whites and blacks alike, are simply non-discriminatory conditions of employment falling within the ambit of managerial decision to promote the best interests of its business." Courts in Georgia, California, and Texas ruled similarly. *See Carswell v. Peachford Hosp.*, No. C80-222A, 1981 WL 224, at *2 (N.D. Ga. May 26, 1981) ("[A]n even-handed application of reasonable grooming standards does not constitute racial discrimination."); *Wofford*, 78 F.R.D. at 469 (even where hair is considered part of plaintiff's "racial identity" it cannot form the basis of disparate treatment suit under Title VII); *Thomas*, 392 F. Supp. at 374 ("Distinctions in employment practices . . . on the basis of something other than immutable or protected characteristics do not inhibit employment opportunity in violation of [Title VII].").

More recent cases continue to reject an intentional racial discrimination claim based on an employer's hairstyle policy. Indeed, many courts have heard such challenges, and all have been rejected. *See*, *e.g.*, *Pitts v. Wild Adventures, Inc.*, No. 7:06-CV-62-HL, 2008 WL 1899306, at *6 (M.D. Ga. Apr. 25, 2008) (summary

- 8 -

judgment for employer in suit against employer's policy prohibiting "cornrows" on the job); *Eatman*, 194 F. Supp. 2d at 262 (policy prohibiting dreadlocks is not racial discrimination in violation of Title VII); *Santee v. Windsor Court Hotel Ltd. P'ship*, No. 99-3891, 2000 WL 1610775, at *3 (E.D. La. Oct. 26, 2000) (policy prohibiting "extreme" hair colors was not racial discrimination in violation of Title VII); *Cooper v. Am. Airlines, Inc.*, No. 97-1901, 1998 WL 276235, at *1 (4th Cir. May 26, 1998) (per curiam) (employer's policy to prohibit all-braided hairstyle not racial discrimination); *see also McBride v. Lawstaf, Inc.*, No. 1:96-cv-0196-cc, 1996 WL 755779, at *2 (N.D. Ga. Sept. 19, 1996) (Title VII retaliation claim dismissed because plaintiff's belief that a policy prohibiting deadlocks violated Title VII was unreasonable).

This Court should not be the first to recognize a Title VII claim based on nothing more than an employer's decision that employees must wear professional hairstyles at work.  Only Congress can create new protected groups, *see City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 709 (1978), and, when necessary, has not hesitated to do so.  Since 1964, when Title VII first prohibited racial discrimination in employment, Congress has passed laws prohibiting discrimination on the basis of age, disability, and pregnancy.  But because Congress has not acted to prohibit hairstyles or other "cultural" characteristics, courts have consistently determined that Title VII protections only apply to immutable traits.  *See*

Greene, *supra*, at 1361; Bruce E. May, *The Character Component of Occupational Licensing Laws: A Continuing Barrier to the Ex-Felon's Employment Opportunities*, 71 N.D. L. Rev. 187, 204 (1995).

A uniform employment policy requiring that all individuals style their hair in a professional manner cannot be equated to discrimination based on a immutable characteristic, such as race. It cannot be denied that this country has a sordid history when it comes to racial discrimination. The nation's belief in equality under the law was "purchased at the price of immeasurable human suffering." *Adarand*, 515 U.S. at 240 (Thomas, J., concurring). This lawsuit denigrates that history by equating a common business decision with intentional racial discrimination. Because Title VII does not prohibit employers from requiring professional hairstyles in the workplace, this lawsuit should be dismissed and the decision below should be affirmed.

## II

### THIS COURT SHOULD REJECT THE EEOC'S LATEST ATTEMPT TO REWRITE TITLE VII

EEOC, by this lawsuit, asks this Court to interpret the word "race" under Title VII to include a particular hairstyle—dreadlocks. The EEOC proposes to introduce "expert testimony" that wearing dreadlocks is a "natural method of managing the physiological construct of Black hair." *Catastrophe Mgmt. Solutions*, 11 F. Supp. 3d at 1144. As described above, no court has held that a policy regarding

a mutable characteristic, such as hairstyle, is the equivalent of racial discrimination under Title VII.  But even if EEOC could  find experts to so testify, such testimony would be irrelevant to demonstrating that Catastrophe's policy is facially discriminatory on the basis of race.[3]  Despite the overwhelming authority against EEOC's legal claim, the agency is now asking this Court to reverse the lower court's judgment.

EEOC's actions in this case reflect a growing trend by the agency to pursue Title VII claims in ways directly contrary to the intent of the statute.  Over the past several months, EEOC has brought claims that force the federal courts to rule on issues that are—at best—contrary to well-settled law.  Undaunted by harsh district court opinions, EEOC has sought to have the nation's federal appellate courts overturn clear precedent, and mold discrimination law to fit its ideological preferences.

For example, in *Kaplan Higher Educ. Corp.*, 748 F.3d at 751, EEOC brought a Title VII disparate impact claim against an employer that screened job applicants' credit histories for indications of financial stress, on the theory that individuals who were subject to a financial burden would be more likely to steal from the company. Kaplan adopted the policy after it had experienced problems with employee theft.  *Id.*

---

[3] Whether wearing dreadlocks is a "natural" method of managing black hair is irrelevant to proving that dreadlocks are an immutable racial characteristic, as the district court correctly noted.  *See Catastrophe Mgmt. Solutions*, 11 F. Supp. 3d at 1144.  Many different hairstyles may be "natural," but that does not prohibit employers from requiring professional looking hairstyles in the workplace.

Yet EEOC litigated the suit, even though the policy was clearly business related—as evidenced by EEOC's own use of credit checks to evaluate potential employees. *See EEOC v. Kaplan Higher Learning Educ. Corp.*, No. 1:10 CV 2882, 2013 WL 322116, at *3 (N.D. Ohio Jan. 28, 2013).

Because Kaplan had not asked for the race of the job applicants, EEOC was unable to demonstrate that the policy resulted in statistical disparities in violation of Title VII's disparate impact provisions. *Kaplan Higher Educ. Corp.*, 748 F.3d at 751. Rather than asking the applicants to self-identify their race—as EEOC counsels employers[4]—EEOC resorted to establishing a panel of "race raters" to assign a race to each Kaplan applicant based on nothing more than the applicant's driver's license photo. *Id.* In other words, EEOC assigned races to individuals based on what they looked like, and then tried to reverse-engineer a disparate impact lawsuit. *Id.*

The Sixth Circuit used strong language in affirming the lower court's dismissal of the case. The Court explained that "[t]he EEOC brought this case on the basis of a homemade methodology, crafted by a witness with no particular expertise to craft it, administered by persons with no particular expertise to administer it, tested by no one, and accepted only by the witness himself." *Kaplan Higher Educ. Corp.*, 748 F.3d at 754. In order to "enforce" Title VII's disparate impact provisions, EEOC

---

[4] *See* U.S. EEOC, Questions and Answers - Implementation of Revised Race and Ethnic Categories, *available at* http://www.eeoc.gov/employers/eeo1/qanda-implemen tation.cfm (last visited Jan. 8, 2015).

stereotyped individuals based on their "look," which, even if done scientifically, is a woefully inadequate proxy for race.  *See* Kevin R. Johnson, *The Case Against Race Profiling in Immigration Enforcement*, 78 Wash. U. L.Q. 675, 722 (2000).  Not to mention that its actions were plainly unconstitutional.  *See Miller v. Johnson*, 515 U.S. 900, 912, 920 (1995) (citation omitted) (The assumption that individuals of a same race " 'think alike, share the same political interests, and will prefer the same candidates at the polls' " is "racial stereotyping at odds with equal protection mandates.").

In another ongoing case, *Freeman*, 961 F. Supp. 2d 783, EEOC  attempts to prevent a business from conducting criminal background checks on prospective employees.  For decades, courts across the country have resoundingly rejected claims that such background checks run afoul of Title VII.  *See*, *e.g.*, *Richardson v. Hotel Corp. of Am.*, 332 F. Supp. 519, 521 (E.D. La. 1971); *EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 753 (S.D. Fla. 1989); *Davis v. City of Dallas*, 777 F.2d 205, 225 (5th Cir. 1985); *see also* Kristen A. Williams, *Employing Ex-Offenders: Shifting the Evaluation of Workplace Risks and Opportunities from Employers to Corrections*, 55 UCLA L. Rev. 521, 541 (2007) (explaining that courts have been "fairly lenient" in finding that employers who screen applicants for criminal histories do not run afoul of Title VII).  These courts recognize the commonsense reason that employers perform criminal background checks:  It is reasonable "to require that

- 13 -

persons employed in positions where they have access to valuable property of others have a record reasonably free from convictions." *Richardson*, 332 F. Supp. at 521.

The EEOC's decision to target Freeman for its use of criminal background checks flies in the face of Supreme Court precedent that recognizes that distinctions between individuals based on past behavior do not raise the same concerns as distinctions based on immutable characteristics. *See Manhart*, 435 U.S. at 709. Employers should be free to engage in "thoughtful scrutiny of individuals," without fear of running afoul of the nation's anti-discrimination laws. *Id.* An employer's policy of checking for past criminal acts is the type of "thoughtful scrutiny" that the Supreme Court envisioned as consistent with Title VII. *Id.*

Much like the *Kaplan* case, the district court dismissed EEOC's lawsuit against Freeman in a strongly worded opinion. *Freeman*, 961 F. Supp. 2d  803.  The court held that "[s]omething more, far more, than what is relied upon by the EEOC in this case must be utilized to justify a disparate impact claim based upon criminal history and credit checks.  To require less, would be to condemn the use of common sense, and this is simply not what the discrimination laws of this country require." *Id.* Undaunted, the EEOC has appealed the district court's dismissal; argument in the Fourth Circuit was heard in October.

Both *Kaplan* and *Freeman* demonstrate the EEOC's goal to expand the reach of Title VII.  As in this lawsuit, EEOC filed Title VII claims using legal theories that

have been resoundingly rejected by federal courts.  And despite the commonsense dismissals by the district courts in all three cases, EEOC seeks a different result in the appellate courts, knowing full-well that courts cannot rewrite Title VII in ways not countenanced by the statute.

## CONCLUSION

For these reasons, this Court should affirm the district court's order dismissing EEOC's lawsuit against Catastrophe Management Solutions.

DATED:  January 14, 2015.

Respectfully submitted,


By _____ s/ Joshua P. Thompson _____
        JOSHUA P. THOMPSON

MERIEM L. HUBBARD
JOSHUA P. THOMPSON
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

Counsel for Amicus Curiae
Pacific Legal Foundation

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,493 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in 14-point Times New Roman.

_____s/ Joshua P. Thompson_____
JOSHUA P. THOMPSON

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION IN SUPPORT OF DEFENDANT - APPELLEE AND AFFIRMANCE was filed with the Clerk this 14th day of January, 2015, via Federal Express.  I further certify that copies of the foregoing BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION IN SUPPORT OF DEFENDANT - APPELLEE AND AFFIRMANCE were served this day via first-class mail, postage prepaid, upon each of the following:

> PAULA R. BRUNER
> Equal Employment Opportunity Commission
> Office of General Counsel-Appellate Services
> 131 M Street NE
> Floor 5
> Washington, DC  20507-0004
>
> C. EMANUEL SMITH
> JULIE BEAN
> MARSHA L. RUCKER
> EEOC
> 1130 22nd Street South
> Suite 2000
> Birmingham, AL  35205
> *Counsel for Plaintiff - Appellant*
>
> DAVID J. MIDDLEBROOKS
> WHITNEY R. BROWN
> Lehr Middlebrooks & Vreeland, P.C.
> 2021 Third Avenue North
> Birmingham, AL  35203

- 17 -

EUGENE SCALIA
THOMAS M. JOHNSON JR.
Gibson Dunn & Crutcher LLP
1050 Connecticut Avenue NW
Floor 3
Washington, DC  20036
*Counsel for Defendant - Appellee*



_____s/ Joshua P. Thompson_____
JOSHUA P. THOMPSON